The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit.  Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, gentlemen. We're happy to have you here to present your arguments today on the single-issue matter before us today. You see the panel before you, Judge Heitens and Judge Richardson, both present. So if you can all hear us, we will proceed with the argument as directed, and we'll hear from the Appellate's counsel first. Good morning. Thank you, Your Honors. May it please the Court. I'm the Appellate, Chris Michelle, on behalf of Express Scripts, arguing in support of the Joint Motion for a Stay pending Appeal. In 2011, Congress created a statutory right to appeal remand orders in cases removed under the Federal Officer Removal statute. It did so against an established background rule that appeals involving, among other things, the proper forum for a suit, preclude further proceedings in the lower court unless Congress states otherwise. The Supreme Court applied that principle in Coinbase to require a stay in appeals from denials of motions to compel arbitration, and the same principle applies to the remand order in this case. As in Coinbase, allowing this litigation to proceed during the appeal would defeat the purpose of the statutory appellate right that Congress created in 2011. Your whole case, and let me just say that you can assume that if you've ever seen a hot panel, you have a hot panel here, this court here very much understand the facts and perhaps even the law of this case, and there's some nuances we want to ferret out. Your whole case, I think, seems to turn upon our, the Coinbase case, and that the Supreme Court's determination in that case, which Justice Jackson sort of wanted to say was cabin to arbitration, you think otherwise, as well as others. And so why don't you address directly the reach of that case and how, whether it compels us to go away, and the implications of what it would mean for this case. Of course, Your Honor, I do think that the Coinbase is an exceptionally helpful and on point decision here, but I think Coinbase on its own terms was applying a background rule that existed before Coinbase itself. After all, although Coinbase decided the arbitration issue that was before the court, it relied on the same principle that the court, that courts had applied in, it noted qualified immunity and double jeopardy. So if it already existed with the Griggs rule that was Coinbase, was it a new determination? I mean, I hadn't seen any cases like it before, not from the Supreme Court at least. And it seems as though it was the Supreme Court, which can do what it wants to do, decided that case in that context. And so, at least from my view, it looks like Coinbase set the stage. We have cases before Coinbase, but it seems like if Coinbase changed the rule, then we are now in the direction of looking at Coinbase and how it affects us, not trying to go to the underlying basis of why they did it. They can do it just because they want to do it. But of course, they use reasoning.  So, you know, I think one of the reasons that these issues haven't come up that often before Coinbase is that these are relatively new statutes. This statute, in this case, was enacted in 2011. So there's just not a large body of law presenting this question. It's certainly Coinbase, I would say, certainly clarified the law in this area. And I do think Coinbase clarified a rule that the courts of appeals and lower courts need to follow going forward. Your Honor mentioned Justice Jackson's opinion, and of course, she disagreed with the majority on the merits. But I think there was commonality between Justice Jackson and the majority in that she recognized that the court was was recognizing a principle broader than just arbitration. It at least extends to cases about the proper forum. I do want to be careful. I want to counsel. Well, can you help me a little bit? I'm trying to understand where you think the line is, not just with arbitration. I'm trying to understand a little bit where you think the line is. And what I'm thinking about is 3731, the sort of government appeals context when the government appeals a suppression motion like that, it seems to be some broad agreement that you can't start the trial, that that would violate this sort of Griggs principle. But, you know, Judge Posner's opinion in the Seventh Circuit and seems to be the sort of sense that pretrial matter, that sort of suggests not a complete stay in the 3731 context. Can you help me understand how that applies here or how you think that informs the nature of the rule that you would have us apply? Yes, Your Honor, 3731, as you likely know, came up with the oral argument in Coinbase. And I think the court didn't address it in its opinion. But at the discussion, at the argument, I think was consistent with the way you described the rule. I think that there are basically three elements of the Coinbase rule or the rule that the court recognized in Coinbase. First, there has to be a statutory right to an immediate appeal. That's pretty rare, but it's also pretty clear in this case. It's pretty clear in 9 U.S.C. 16a in Coinbase. Second, the statutory right to an appeal isn't just statutes like this statute or 23 F or 1292 B. The statutory right to appeal also includes any case that falls within the collateral order doctrine. Right. So it's a little weird to call it a statutory right. But you would you encompass that because right. Sovereign immunity, qualified immunity, those are all under that collateral order. You're right, Judge Heitens. As you as you know, the court's collateral order doctrine is a little bit messy, but it ultimately is a construction of 28 U.S.C. 1291. And I think it's a determination that that certain narrow category of cases are final with meaning of 1291. So it is ultimately a statutory right. Of course, I don't think there can be any real dispute here that there's a statutory right to an appeal. It's in 1447 D. There are two. There's these cases, federal officer removal and then civil rights removal cases. Those are that's 28 U.S.C. 1443. So I do think the rule you announce here would also apply to the civil rights context. But partly because the collateral order doctrine is narrow, I don't think the rule is going to apply too broadly beyond those categories. Just to go back to what are the two elements of the first is there's a right, maybe broadly defined statutorily given the collateral order doctrine, but there's a right deriving from a statute. What are the other two? Second one is that the appeal has to involve the entire case. And I think the paradigm example of that which came up in Coinbase is when the appeal involved forum is litigating the case. That's equally true here as it was in Coinbase. Coinbase, it was about whether the arbitrator or the district court is going to decide here. It's about whether the district court, federal district court or the state court is going to decide. And the third element is that Congress has to have not displaced the background stay rule. And as Justice Kavanaugh's opinion for the court in footnote six notes, there are plenty of statutes where Congress. So can you go back? Can you go back to the second element in the 3731 context? And I get it's criminal and maybe it's different, but that doesn't involve the entire case. Right. And so, I mean, that's sort of the point there that even though the 3731 appeals would divest the court of the authority to go to trial, it wouldn't divest the authority of the judge to engage in other pretrial proceedings. And so your your suggestion is that that just fails. I guess I don't understand how that second element would apply in the 3731 context. So I don't think I don't think it would apply in the 3731 context. There may be, as your honor suggests, particular considerations about criminal cases and not letting criminal prosecutions, you know, get ahead of the appeal. But I don't think we have to I don't think we have the ultimate disposition. But I thought the point they seem like to me, the point was that when we look at the Griggs principle, which is Coinbase is applying, is that we have to figure out at step two instead of whether it's the entire case, we have to figure out what aspects are involved. Right. And because in this case, if there was a question about attorney's fees, for example, I take you would agree the district court could address some attorney fee related issue, even though, you know, the case otherwise, in your view, shouldn't go forward. I agree with that, your honor. And I think but this is the easy case in terms of the second element, because it involves exactly the same posture as Coinbase. But I so tell me, help me understand how you would formulate that second element, because it can't be it's the entire case like that doesn't seem to work. Right. That's the Kavanaugh's footnote that, you know, attorney fees issues could be resolved. Right. So so what is the second issue? If it's not the entire case, which wouldn't be the true in thirty one, thirty seven or thirty thirty one, it wouldn't seemingly be true. And actually, Coinbase itself, because there are collateral issues that could be resolved. So what is the second element? It's not the entire case. So I think I mean, I don't want to run too much from the entire case. I do think that's the language the Supreme Court used in Coinbase. But I think another way to understand it is perhaps an antecedent legal issue as a court for any further proceedings. So Coinbase, that antecedent legal issue was who which court is going to adjudicate the case. In our case, it's the exact same legal issue, which court is going to adjudicate the case. And if you if the if this court agrees with us and puts this case into federal district court, there'll be no jurisdiction for the state court to do anything, just as there were jurisdiction for the district court to do anything in Coinbase. If Coinbase's position ultimately prevailed on appeal. So this is the heartland. That second element. So what would you do with an interlocutory appeal on intervention? So if you have an intervener who appeals and in essence, he's seeking the ability to participate in the proceeding, where does that fall on this second element? Yeah, yeah. My first reaction is I don't think that falls within the element. I mean, it falls within the case because the case can proceed with or without the intervener. I certainly don't think the court needs to go that far to resolve this case. That's probably how I would come down on it. But again, I think this is the this is a particularly straightforward case after Coinbase, because the second element really is the same element it was here. And if anything, as we say in our brief, with that, with no disrespect for the interests at play in Coinbase, here we have the federal officer removal statute, which really involves elementary fundamental protections for the federal government. As Judge Friendly said, this statute was enacted to help the government protect its existence. And here, of course, we're here on behalf of a company acting under a federal officer, which is an important application. But the rule you set forth here will also apply to removals by the United States itself, by federal agencies, by officers of the federal courts, which are expressly enumerated, and by members of Congress. And that if you go down 1442A1 through four, all of those categories are expressly enumerated. And what the what the statute was enacted way back in the day to protect against was federal officials being subjected to harassment or other forms of disruption in state courts. We did a difference of the forum in Coinbase. We were talking arbitration. It's very clear that if a matter is going to arbitration, it's outside of the court system, even in a private venue or wherever, it's totally outside of it. Here you are talking about sending a matter back to state court. And traditionally, when that comes up, when it comes up for review, which the issue is still before us, we then accord the district court discretion as to whether this matter should be stayed or not. And we incorporate the principles upon which that discretion could be abused. Why is that not appropriate in when you are talking about courts as opposed to a alternate form of dispute resolution? There's a couple of answers. I think the whole purpose of the federal officer removal statute, of course, is Congress's determination that there is a certain narrow category of cases, those involving federal officers that are not appropriate to be in state court because there's too much risk to the federal system created by having those cases in state court. So that's why I think the forum really does matter here as to why a discretionary rule wouldn't be enough. Justice Kavanaugh addressed this directly in Coinbase. He said, if you require the Nikin factors to be satisfied, one of those factors is irreparable harm. And typically, courts have said that litigation burdens don't constitute irreparable harm. So it's very hard to satisfy the Nikin factors, even if you have, as we think we have here, an extremely meritorious appeal. It's very likely. Let me ask you this before you run out. So ultimately, the issue here is a matter of not just a forum, but the timing of it. And the question, because there's a bigger question coming to us, and that is, was there, in fact, a state should have been granted. And the question is, is that something we should decide today or can we decide that today? I mean, we make the district court went there and even issues of whether there was authority under the act to do so as a matter of judicial expediency is to just address the merits of it. You know, when we're talking about staying a matter, the primary concern is it could just take a while for a federal court to on appeals to to then handle it. Then you've got an extended period of time. Then finally, it goes back. If we decide that it does belong to the court, it then goes and you've got another matter going on. But speak to the timing issue here. And the matter was expedited. Is it a matter that perhaps we should expedite appeals like this to avoid having the impact of this kind of decision to be in the greater force? Yes, your honor, I agree with your honor. And this also came up in the Coinbase argument. And Justice Kavanaugh's opinion was that we could decide that issue right now on the record before us. And because I can say that once this is where we go, this might be a non issue that beyond beyond where we are today. So how do you how do you how do you what do you think about that? Well, I'd be happy to argue the merits, you know, in my five minute rebuttal. But I think the better course would be for I'm not asking you to answer the merits. And I mean, the briefs are there and it's all there. But but the determination of this question here could greatly inform how we will have to proceed on the merits might not be much of a marriage. If we follow your advice and say that it is mandated. OK, yeah, I was sorry. I was distinguished from the merits of the removal itself and the stay issue. I think what the court should decide today or as quickly as possible is that a stay should be entered. But I think you can take comfort in the fact that stay is not going to be in place for very long because the court has has responsibly, in our view, expedited the merits determination. And we're ready. I think our reply brief is due on Monday. We'll be ready to argue that as quickly as the court wants. So there is protection built in. I'm happy to conclude or finish my answer, your honor. You can. I'm going to bring you back. You got some time, I think. I think you have time to rebuttal and we'll bring you back. And so we'll hear from Conrad this time. Thank you, your honor. We may please the court. Conrad, this call law firm for the city of Martinsville to just start back with the question that Judge Richardson asked a few minutes ago, which is where do you draw the line? And I think that particular question sort of dovetails well with all the issues here. I think that we can look and see where we draw the line in the only two cases that I'm aware of, at least that have actually applied Coinbase outside of the arbitration context since it was decided. That's the United States versus Trump case and the AOA versus Renner case, which came out of the Eastern District of Missouri. In both of those cases, they're both very short opinions. The Renner opinion, I think, is just a few paragraphs. The court said, OK, we decided fundamental issues and the way that we decide them means that the cases would be staying in federal district court. Cases are you talking about? Call them out. I'm talking about United States versus Trump, which was the case decided. It involved the interlocutory appeal of soon to be President Trump's presidential immunity argument came out of the District of D.C. and December of 2023. And the other case was AOA versus Renner. It's a September 2023 decision of the Eastern District of Missouri. All right. So both of those cases are district court opinions. Both of those cases, the district court said, OK, we have work left to do. And both of those cases are district court opinions. They are both district court opinions. Yes, sir. Published? The Renner opinion is I just have a Westlaw site for it. There's a it's a very short memorandum in order. It's the Westlaw, so it's 2023. W.L. eight six four one six zero one. And they're both cited in and discussed in both briefs. And the Trump case was United States versus Trump. Seven of six F's up third ninety one. And I take it this is your best authority since you let off with those two cases. No, no, no. I don't. Both of those. Don't you give us your best authority? Excuse me. Your best authority for your position. Well, the best authority for our position are is the district in New Jersey case that said Coinbase doesn't apply. This was the July of 2023 decision involving. This is, again, another district court opinion. It's a district court opinion. So a district court opinion is the best authority you have. I'm not saying it's not persuasive, doesn't have some some value, but I just want to make sure I understand there's no circuit court case and no Supreme Court case that you can point to that really helps you on this point more so than this district court case. No, there actually are. There's a there's a both an 11th Circuit decision and a second circuit decision, both of which say Coinbase doesn't apply. The second circuit decision says Coinbase doesn't apply, but it doesn't provide any analysis. The 11th Circuit opinion says Coinbase doesn't apply because it was limited to arbitration proceeding to not do the 11th Circuit of the Northern District of Georgia also says the criminal removal statute has a provision that says removal does not stay what's going on in state court. Right. And like the 11th Circuit are both specifically relied on that the criminal removal statute has a provision that says that. OK, Judge, Judge, you're right about that. But it was the district court opinion and the district court opinion distinguished the situation on that specific ground. It was then appealed to the 11th Circuit. The 11th Circuit doesn't mention that ground. The 11th Circuit says we don't think it applies. We don't think Coinbase applies because it was in the arbitration context. I guess then the answer is why? Because you can say, I mean, well, there's two statements. There's Coinbase is limited to the arbitration process. Now, that that can be the descriptive statement like Coinbase was, in fact, a case about arbitration. Absolutely true. But then it becomes a normative statement that says it only applies to the arbitration context. And the answer that I have, I guess the question I for you, because it's the same question I for the second circuit. It's the same question I for the 11th. Why? They don't give any reason other than just saying it. And I have to say, candidly, when I read Coinbase, the court gives a whole series of reasons, virtually every one of which seems to apply in this context as well. So and I guess I'll just I'll say this and then stop. Coinbase also says we are deciding this case pursuant to something called the Griggs principle. And it seems that the way that Coinbase formulates the Griggs principle applies in this situation, too. So I just don't think it's a complete answer to go from that was a case about arbitration to that case only applies to arbitrate. I don't just judge Titans, at least to some extent. And that was the reason I started with the A.O.A. Rennert and the Trump case, because I wanted I wanted to talk about the issue that you're getting right now, which is to the extent that maybe it doesn't apply out. It does apply outside the arbitration context. Where would that be? And both of both the Trump case, maybe maybe a federal officer removal. Excuse me. I just seems like one of the places that applies is federal officer. I take that was Judge Heiden's point, right? What I don't understand, and I'm just maybe I'm just restating is why would it not apply here equally to the arbitration context? I understand. And that's what I'm that's where I'm going. So Griggs talks about further proceedings in district courts. The Trump case talked about further proceedings in district courts. The Rennert case talked about further proceedings in the district court. Every single one of them involve further proceedings in a federal district court. That is the Griggs principle. This is not a federal officer removal case. When you're talking about stay is not talking about further proceedings in a federal district court. The Griggs principle does not apply when you're talking about further proceedings in a state court. It just doesn't on its face. And so when you're talking about that, does that argument, are you turning that argument on the fact that rather than stay the case in the district court, the district court instead went ahead and mailed it to remand order? And so, in other words, your argument is by virtue of the district court improperly taking action, it like divests us of the authority. To tell it to stay, it's proceedings. No, I'm not sure. I'm not saying it divests you of the authority, because those are two different things. And as you know, it's noted in his in his order that set this hearing there in the Chevron case out of Louisiana, which went up to the Fifth Circuit. Yes, there this court has the ability to continue this appeal. But the Griggs principle is a different principle than whether this court continues to have authority to over this appeal and whether the district court has authority over this appeal. The Griggs principle is when a federal district, when there's an interlocutory appeal of a of an issue and the federal district court case is going forward. Those proceedings at the federal district court case are stayed. And this is I'm not not saying this is not my argument is not an indictment of the Griggs principle. My argument is it's a different thing. It's a different animal. You have the Griggs principle over here. And in this case, you have a remand to a state court. And so what you're asking in a motion to stay context is you're asking that the proceedings in the state court be stayed. And that is not an implication of the Griggs principle. That's not right. But let me let me just ask you this. Here's the fact that it concludes. I should remand this case to state court. Let's say that a district court concludes as the district court concludes here. I should remand this case to state court. But under sort of federal civil procedure that doesn't demand the case to state court. What remands the state to case to state court is when the district court does something else. And that is mail the remand order to state court. Right. And so but the problem is, by the time the district court is thinking about mailing that remand order. The defendants have filed a notice of appeal. Right. Right. But at least in the ordinary case, the defendants have filed a notice of appeal by the time that happens. And so, well, then that seems to invoke the Griggs principle because the Griggs principle asks, since the question of whether to remand this case to state court is currently before the Fourth Circuit. Should I mail this remand order? And I would suggest the Griggs principle seems to say, no, you should not mail that remand order because whether or not we should remand this case to state court is currently in front of the appellate court. Don't mail the remand order for the Griggs principle. Well, I think, first of all, the Griggs principle was. If we're not talking about the further proceedings of of any kind in in the district court, other than your point about the mailing, but the mailing is is an administrative consequence of the order. The court doesn't have to enter some other order. The court doesn't have to the court doesn't have to do anything other than just stick the order in the mail. I mean, it's it's it's a it's a I'm trying to think of the right phrasing. It's it's an administrative consequence of the fact that the order granting the motion to remand has been and it's not. You know, it's it's not the district court statutory requirement, right? It's an action. The statute requires the district court to take. I agree. And I and it's but it's a consequence of the of the order having been entered that grants the motion to remand. If you grant the motion to remand, you then stick the order remanding in the mail. So to say that that's a further act. I'm sorry to say so. What can I flip to the practical concern that I have? The practical concern is now I don't think it's going to happen here because we've expedited the briefing. I have every confidence we'll decide this removal question judiciously, but let's imagine the bad scenario, the bad scenario where the question of whether the case was properly remanded is before an appellate court. In your view, the case just goes back to state court and gets litigated on the merits while that appeal is pending. Right. True. What happens if the state court issues a judgment on the merits while the case is on appeal about the removability question? Like I mean, the most plausible would be let me just posit that I assume they're going to file a motion to dismiss. So what if the state court on remand grants a motion to dismiss while the appeal of removability is pending before this court? Doesn't that seem problematic and potentially super wasteful and creating all kinds of preclusion problems potentially? Well, first of all, the the universe that you're proposing is a binary one where there's either a stay or no stay, depending on the application of Coinbase. I'm not saying that that's I'm not saying that that's your view generally. I'm just saying that your question sort of posits that binary universe. We're not in a binary universe, though. We are in a universe where any party can seek a stay of an appeal based on the traditional discretionary factors. This isn't a this isn't a question of whether or not somebody can get a stay. This is a question of whether or not Coinbase automatically imposes a stay. And under your scenario, Judge Heitens, presumably the the imposition of a final judgment, you know, the concern about that would be a factor that a court would take into consideration when applying the traditional factors. And in fact, you know, Judge Jackson, that's sort of the whole point of her dissent is, look, these discretionary factors have served us well in all sorts of circumstances, including the arbitration context. And so there's no reason to do anything else. And frankly, I think she calls it I think the word she used was madness. If it if it turns out that this rule is applied beyond the arbitration context. Counsel, what in response to Judge Heitens question, what do you think would happen? So imagine the binary world that has been posited and it goes back to to the state court and a judgment is issued. And this court later found that the remand was improper. But what what happens then? It's vacated. I mean, and frankly, if if the state court judgment is vacated. Yes. Because at that point, the there there would have been no jurisdiction for the for the state court to enter that because the case still remained in federal court. Right. Because we had an interlocutory appeal because you have an interlocutory appeal. Besides, I mean, it may be this is just my practical nature, because I I've been litigating, you know, cases like this for the last five or six years that have evolved federal officer issues repeatedly. It's just as a practical matter, it's hard for me to imagine a defendant getting anywhere near a state court judgment and and not and not. That might be true in these in these types of federal officer cases. But the whole point of federal officer cases is maybe not its core concern involving, you know, drug companies, but instead is an actual federal officer, not an agent who, you know, is being railroaded by state courts. And so in those scenarios, the very concern that we're like targeting here with this statute is that the state court is going to railroad the federal officer. I'm not. Well, you don't you don't have that concern in criminal cases because Judge Heitens just noted that the the criminal removal statute is a little bit different. And by its by its own terms, the criminal removal statute, Section 1455 does not permit an actual judgment of conviction to be entered. So we're only talking about civil cases in this scenario, which I think assuages your concern at least somewhat. I understand your your point. I still come back to the fact that this is a there is still an avenue for consideration of these equitable factors. Those equitable factors have served litigants well in all sorts of circumstances. And in fact, if you read Coinbase, Judge Justice, excuse me, Justice, what would the if you were applying the the Niken factors here? What would the irreparable harm be like? How could a how could your your colleague show irreparable harm? Like what what would you point to if you were in his shoes? I understand this is hypothetical, but like what is what's plausibly the irreparable harm? Well, I think if you have, you know, if you if you're in a scenario where you have a looming judgment about to be entered and, you know, looming collections or some other sort of immediate impact on your business going forward, it wouldn't be it wouldn't be a judgment. Right. As you just said, as long as we change the result on appeal, the judgment's going to go away. I'm maybe less confident about that than you are. But I I hear you about that. And I do think that's a protection. And I think that the but I think that it could be considered as part of the irreparable harm inquiry. Now, the courts have generally said that litigation burden and expense is not irreparable harm. I'm not aware of any court that has said, you know, the actual imposition of a judgment would not constitute some potential form of irreparable harm. And you're right, it it it arguably isn't because the judgment would be vacated anyway. But remember, there are irreparable harm isn't the only factor. I mean, you've got irreparable harm, you've got likelihood of success in the merits, you've got the potential prejudice to the to the two different parties, all of the traditional factors that courts like yours have applied in all sorts of scenarios for years and years and years, and including scenarios that involve potential for the imposition of judgment. You know, the and I guess the other point, and just to get back to Coinbase and talk about what Coinbase actually says, you've got Justice Kavanaugh, and I'm just going to use his name for shorthand because he wrote the majority opinion. He starts off by saying this is a case solely about arbitration. He then talks about the Griggs principle and he says the Griggs principle is the background that applied here. He then goes on to talk about the fact that when you have arbitration, you have limited, potentially limited discovery, you have the kinds of efficiencies that people sign contracts with arbitration to take advantage of. And if you have to litigate in district court, you're giving up all those efficiencies. None of the things that Justice Kavanaugh talks about are in play here. Well, but then you just stopped right before it's about to shift in a big way, because the next thing he says is absent to state parties might be forced to settle to avoid litigating a form. They don't want to litigate. Seems like that applies here. He also says he then starts giving a big love note to Judge Easterbrook and start saying, like, what's the point of the appeal if the trial can just go forward while the case is on appeal? And I'm from SDSU. He said Congress's longstanding practice, like when Congress doesn't want there to be a state, Congress says so. That applies here. Only he only says that, though, Judge Highton's about the Griggs principle. He says if it's going to go forward in district court. But again, I think that's the fundamental chasm here is it's not going forward in district court. So that background doesn't apply. So that OK, so that seems like it's got to be the nut of your argument, because then Justice Kavanaugh's opinion gives five reasons, responds to five arguments against this. Virtually every single one of which also applies here, too. I don't think they apply. I know exactly what you're talking about, Judge Highton. I don't think they actually apply when you're talking about going forward in state court. The other thing is, remember this, you've you've got federalism concerns here. I mean, you're you're you're you're sucking a case out of state court and putting it into federal court because of federal officer concerns. Of course, we all know that. But you've got to balance that against the the other interests of the state. And that stay multi-factor balancing test seems to favor the the interest of federalism, the way that the balance needs to occur here. Judges, you have any other questions? All right. Thank you, Mr. Conrad. Mr. Michael, you have just a few minutes for rebuttal. Thank you, Your Honor. Just a couple of brief points in rebuttal. I'll start with authority. I think my friend started with two district court opinions. Obviously, I think the Coinbase majority opinion from the Supreme Court is the most pertinent authority here and very much is on our side. I'd also direct the court to the BP case, which the Supreme Court decided a few years earlier, describing 1447 D, the federal officer removal appeal statute. And it said the purpose of that statute was to allow review in the appellate courts before the district court remands. That was not the holding of the case. I acknowledge. And I ask you about BP, because before we got to these opioid cases, there are a whole bunch of climate change cases where defendants are trying extremely hard to be in federal court on the exact same theory as this one or a similar theory to this one. A lot of those defendants, when district courts have ordered remands, have sought stays, including from the Supreme Court and BP itself. Has anyone argued before that there is an automatic state in any of those cases where those extremely well represented and litigious defendants were doing everything they possibly could to stay out of state court? Has anyone made that argument in those cases? And if not, why not? I agree they're well represented. I don't know that those arguments were made. I think that goes back to my exchange with Judge Wynn at the beginning of this argument. Of course, Coinbase was a significant decision in this area. And maybe that nobody saw this until the Supreme Court issued that the Coinbase decision. But of course, we're in a post Coinbase world. And I think that's that's very pertinent here. My friend did point to two district court opinions, though, that don't apply arbitration. They apply Coinbase beyond the beyond the arbitration context. And I think those cases are actually helpful to us. The Trump case, for example, as you know, involves presidential immunity, which is not arbitration. Sorry to distract you. Can you can you address I take your your colleagues, the sort of nut of his argument here fundamentally to be that Griggs doesn't apply because there are no further proceedings in district court. Right. And so he's not maybe a little different from the briefing. But I take him here to be saying the reason Coinbase and Griggs don't apply is that the only thing that happened in the district court was a ministerial act required by statute. But, you know, lots of people mail things and that that Griggs shouldn't apply to that action by the district court, I think because it's ministerial. Can you respond to that argument? Sure. I just I don't think that argument is correct. I think Judge Heitens outlined our position exactly, which is that the Griggs principle does apply here because it divests the district court of authority to issue that remand order. This case is a very clear example. The district court issued to mail the remand order, which, as your honor notes, is required by the final sentence of 28 U.S.C. 1447. Does it matter? Does it not matter at all that that's, you know, it's a ministerial action, right? It's not being done by the judge, right? Surely his judicial assistant is like licking the stamp and putting it on the letter and, you know, whatever we want to imagine. But that doesn't seem like proceedings the way we might think about it in Coinbase and frankly, in all the other cases where there are proceedings that are taking place, not ministerial acts. So to add to that, And so Griggs applies for that reason. The more practical answer is that the effect of that ministerial act is the case to state court where the state court proceedings can can proceed. And here I think this is my colleague touched on federalism. I think two things can happen in the state court, and both of them are bad for federalism. One is that the state court can subject the federal officer to discovery and ultimately judgment, potentially, which is directly contrary to the purpose of the federal officer removal statute to shield federal officers from potentially hostile state courts. The other thing that can happen is the state court can make a bunch of decisions and the parties can spend a bunch of resources litigating the cases only to have it all ripped back into federal court, plugged back into federal court at the end of the day. And if you're concerned about federalism, that's no way to treat state courts, to make state judges do that and then to pull it back when you have a readily available answer, a stay. And to return to where I ended with Judge Wynn last time, Judge Huygens, you may be on mute. Sir. You said that as a practice, you said that as a practical matter, it's important because what it does is a practical matter as it stays the state court litigation from proceeding. Do you agree with me that as a matter of federalism? I guess I wouldn't say that we literally have no authority to say to stay state courts, but it's a it's a big deal for a federal court to stay a state court decision, right? I agree. But this is a unique context as the court's order recognized in the in the federal officer removal context. I think everybody agrees because the federal court can ultimately reverse the remand order on appeal and recall the recall the remand. That's that is an authority that federal courts have. I think ultimately respecting federalism requires entering a short term stay as the court has here with the expedited appeal so that the state court's work is not at risk of being nullified. And probably more importantly, the federal officer is not at risk of hostile proceedings that Congress centuries ago enacted a law to prevent. OK, touch just briefly on the. Difference between the proceedings, one in corn base being arbitration here being a court and notwithstanding the purpose of the removal statute, I'm thinking in terms of we are talking about traditionally it would be the district court judge would have discretion. It could be remanded to the state court and the state court itself could make a determination that we are going to hold this matter pending the outcome of the determination. I mean, it would seem reasonable that a state court would do that and not take on this burden and responsibility. You know, you've got a motion that's pending before a circuit court in this instance for to say that it shouldn't be here. I would find it very difficult to think a district court would do that. On the other hand, an arbitration proceeding is one in which the purpose, the very purpose of it is to avoid those kinds of things that deal with civil discoveries and all kinds of cost saving measures. And and the court was addressing that in corn base and not a discretion of the district court judge, nor the the decision of the state court. And there's a lot of discretionary stuff going on there within those measures. And, you know, when we make a determination of, well, the court is also applying this to a different type of court and to hear Justice Jackson's dissent does ring true in terms of its allegiance to the majority's allegiance to statutory interpretation. Nowhere in the statute is there is that this language, but you can pull it out of there and and surely the Supreme Court can say that and we'll follow it. But then the question is, what do we do? Is this the way in which we now interpret statutes that we can look at it and says, well, this implies it also carries with it a mandated state. But a lot of packed into what I'm saying. But the essence of it being, is there a difference in corn base when you're thinking about arbitration and we're talking about judges, district court judges in one instance, and I think also right with the state court judge judges, a court to determine, do you want to proceed with it? I mean, why would a state knowing this is going to be there would proceed with a matter knowing very well the court could determine you shouldn't even be here. There's plenty of work in the state courts. I doubt they are jumping at the bits to try these cases while something could be taken from it. Judge Judge, let me start right there. You know, you made a good argument. We would make that argument in state court. But the critical point here is that we're dealing with a narrow category of cases involving federal officers, and Congress has enacted the statute precisely because it's concerned that you're saying it should be cabin to cases dealing with the federal officer statute, that we don't need to write something that would apply more broadly as what has been alluded here. Well, that would just create another category. Got arbitration cases. Now we go. We're doing this case by case. So should there just be a general rule that might spill over into suppression motions, might spill other places? How do we deal with that? That's certainly one limiting principle that the court has been talking about. Right. So I think on the state court, I think the last thing Congress would want to do is entrust this decision to the discretion of the state courts in the federal officer removal context. That's why there's a federal officer removal statute. And in fact, the twenty the twenty eleven amendment, as the court is probably aware, was if you look at the legislative history, which is not dispositive, it was motivated by a case out of Texas where a Texas state court issued discovery against a federal member of Congress and the Fifth Circuit ultimately denied the denied the appeal and held that it lacked jurisdiction to hold the appeal. So to hear the appeal. So Congress was responding to that heartland case where you have a state court imposing discovery on a federal member of Congress and very much decided to institute this appellate right because it did not want the state court making that determination. I think that makes the federal officer removal context the heartland of this. We're certainly not asking the court to decide anything other than the stay motion before it, which applies in the federal officer removal context. To be candid, I do think the rule you adopt here is also going to apply to civil rights removals, which are under twenty eight U.S.C. fourteen forty three, because that provision is cross referenced right next to fourteen forty two in the removal provision. But I have to say, and obviously I'm not here to defend that case, but I think there's every reason to do that, too. That statute provides when defendants are in state court and have a defense that the statute is discriminating against their civil rights or that they're being prosecuted or sued in state court for enforcing the federal civil rights laws in the state. They need to be exactly what my question adequately. I will ask Judge Richardson, Judge Heighton, do you have any additional questions you'd like to ask? No, thank you. No, thank you. All right. There being no other questions, I want to thank both counsel for the time and the court has been very happy to expedite this matter. We will proceed to decide this matter. And upon decision of it, we will do our best to be expeditious in getting an outcome to you. So thank you. And thank you for being part of the court. Court is going to be adjourned this time and ask the clerk to do so. It's on a record. Stands adjourned. Sign and die. God save the United States and it's on a record.
judges: James Andrew Wynn, Julius N. Richardson, Toby J. Heytens